UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HARVEY RIVERS,

      Plaintiff,

v.                                                                              CASE NO. 6:14-cv-1295-Orl-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

      Defendant.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for period of disability and disability insurance benefits. Plaintiff alleges he became disabled on July 9, 2011. A hearing was held before the assigned Administrative Law Judge ("ALJ") on March 26, 2013, at which Plaintiff was represented by an attorney. (Tr. 25-78.) By a decision dated May 31, 2013, the ALJ found Plaintiff not disabled since July 9, 2011, the alleged onset date, through the date of the decision. (Tr. 12-20.) The Appeals Council denied Plaintiff's request for review. (Tr. 2-4.)

Plaintiff is appealing the Commissioner's decision that he was not disabled during the relevant time period. Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the

reasons stated herein, the undersigned determines that the Commissioner's decision is due to be **REVERSED** and **REMANDED**.

I.      Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

**II.     Discussion**

Plaintiff argues three general points on appeal: (a) that the ALJ's credibility determination is not supported by substantial evidence; (b) that the ALJ's determination that Plaintiff could perform past relevant work is not supported by substantial evidence because the ALJ relied on vocational expert testimony in response to an incomplete hypothetical question; and, (c) that the ALJ's decision is not supported by substantial evidence in light of the medical evidence.

Defendant responds the ALJ properly evaluated Plaintiff's credibility or, alternatively, committed harmless error.  Defendant also argues that the ALJ sufficiently accounted for Plaintiff's limitations in the hypothetical presented to the vocational expert.  Defendant asserts that the ALJ properly concluded that Plaintiff is not disabled and that substantial evidence confirms the ALJ's conclusion.  (Doc. 27.)

**A.     The ALJ's Decision**

The ALJ determined that Plaintiff had severe impairments, including diabetes and diabetic neuropathy.  (Tr. 14.)  The ALJ then determined at Step Three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 16.)

At Step Four, the ALJ found Plaintiff had the RFC to perform light work, but could occasionally "climb, balance, stoop, kneel, crouch, or crawl," but "must avoid working in concentrated exposure to hazards, including heights and

3

dangerous moving machinery, or vibrations." (*Id.*)  In making this finding, the ALJ considered Plaintiff's alleged pain symptoms.  Specifically, the ALJ found Plaintiff's testimony to be "not especially credible," in light of the evidence of record.  (Tr. 17.)

With the benefit of testimony from Vocational Expert Charles K. Heartsill, the ALJ determined that Plaintiff is capable of performing past relevant work as a cleaner/housekeeper and night auditor.  (Tr. 19.)  As such, the ALJ found that Plaintiff was not disabled.  (Tr. 20)

### B.     The ALJ Improperly Discredited Plaintiff's Testimony

Plaintiff argues that the ALJ erred in failing to clearly articulate reasons for discrediting Plaintiff's pain testimony that are supported by substantial evidence. The undersigned agrees.

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so."  *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his "pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain," pursuant to 20 C.F.R. § 404.1529, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that

5

are described in the regulations for evaluating symptoms.[1] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

Here, the ALJ's reasons for discounting Plaintiff's credibility are not supported by substantial evidence. More specifically, the ALJ provided reasons for discounting Plaintiff's testimony that were not clearly articulated and grounded in evidence. Moreover, the ALJ mischaracterized evidence supporting other reasons for discounting Plaintiff's testimony.

The ALJ principally relies upon Plaintiff "actively seeking employment" to discount Plaintiff's testimony regarding his inability to work. (Tr. 16.) In fact, the ALJ mentioned Plaintiff's purported job search no less than five (5) times within

---

[1] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

his credibility analysis. (Tr. 17-19.) Included within that analysis is the ALJ's rejection of a March 20, 2013 Functional Capacity Evaluation that defined Plaintiff's RFC as capable of performing less than sedentary work. (Tr. 18.) The ALJ referenced two progress notes from Jena Medical Family Practice and Walk-In Center ("Jena"), Plaintiff's treating providers, to support his finding regarding Plaintiff's purported job search. The ALJ initially referenced a progress note dated September 9, 2011, which merely states that Plaintiff is "unemployed still, can't find work." (*Id.*) The ALJ subsequently referenced a Jena progress note dated January 9, 2012, which states, "11-30-12 Unemployment but trying to get work done com[e or comb] doing sea walls and incr'd Lortab." (Tr. 349.) Ultimately, the ALJ provided the following reasoning regarding Plaintiff's purported job search:

> It was noted that the claimant was trying to get work combing sea walls on November 30, 2012 (Exhibit 7F/1). This action, especially given the physical nature of the work he was seeking, strongly suggests that the claimant was not totally disabled and incapable of performing any type of work activity as alleged in connection with this application for disability benefits.

(Tr. 11.)

However, at the hearing, the ALJ made clear that he did not fully understand the January 9, 2012 progress note. The following discussion transpired at the hearing:

> Q I've got a question about Exhibit 7F, the first page. It says

> something about – and this is November 30th of 2012, so it was last fall, last winter – it says unemployment, but trying to get work to come or comb, doing seawall and increased Lortab, so were you trying to get some jobs involving seawalls or something like that? Were you trying to get a job involving combing, combing seawalls or something like that?
>
> A Combing seawalls?
>
> Q Yeah.  I'm just – I'm trying to make heads or tails of what he's saying here.  It says –- this is like the third line down from the top, and it says 11/30/12. Unemployment, but trying to get work done to comb– it looks like C O M B – and it says doing seawalls, and then it said – increased – and increased Lortab. Now –
>
> ATTY: The judge is reading off a medical record from Jena Medical Associates or Jena Medical Family Practice, and what he's reading is out of the – what's been charted by somebody with Jena Medical.  Do you have any knowledge or familiarity with what –
>
> A With seawalls?
>
> Q Doesn't ring a bell with you?
>
> A Uh-uh.
>
> Q Never done any work with seawalls?
>
> A It's been quite a while.
>
> Q Building seawalls, fixing seawalls, or cleaning seawalls?
>
> A No, sir.

(Tr. 48-49.)  The discussion indicates not only that the ALJ failed to understand the January 9, 2012 progress note, but also that Plaintiff failed to understand the note.  The ALJ failed to elicit any further details regarding the note supporting the

ALJ's statement that Plaintiff was actively searching for work involving seawalls. Plaintiff clearly stated that he has not previously done any work involving the building, fixing, or cleaning seawalls. Nevertheless, the ALJ used the note as support that Plaintiff actively searched for employment involving "combing" seawalls.[2]

The ALJ similarly failed to explain the September 9, 2011 progress note, or provide any facts supporting the phrase, "can't find work." It appears the ALJ did not inquire into specifics of the purported job search or otherwise evaluate whether Plaintiff sought employment at jobs with physical demands in excess of his stated limitations. *See, e.g., Lafond v. Comm'r of Soc. Sec.*, Case No. 6:14-cv-1001-Orl-DAB, 2015 WL 4076943 at *11 (M.D. Fla. July 2, 2015) (reversing the ALJ's discount of credibility based, in part, on the plaintiff's receipt of unemployment compensation benefits, as the plaintiff attests on the application that he is capable of performing work, and stating that "[t]he Commissioner . . . specifically acknowledges that the ALJ must consider a claimant's application for unemployment benefits along with all of the other evidence in the record and look at the totality of the circumstances"); *Sasnette v. Colvin*, Case No. 5:14-cv-362-VEH, 2015 WL 4459381 at *6 (N.D. Ala. July 21, 2015) ("The Social Security

---

[2] A simple Google search failed to reveal the word "comb" as related to work performed on seawalls. However, the noun "beachcomber" commonly refers to a person who walks along beaches looking for things (such as seashells or items that can be sold). The dictionary definitions for "beachcomber" can be viewed at www.merrium-webster.com/dictionary/beachcomb.

Administration ("SSA") adopted the position that individuals need not choose between applying for unemployment insurance and Social Security disability benefits . . . an ALJ should take into account whether the claimant sought employment at jobs with physical demands in excess of his stated limitations during his period of disability.") (internal quotations omitted) (citing Memorandum from Frank A. Cristaudo, Chief Administrative Law Judge, to all Administrative Law judges (Aug. 9, 2010)).

In any event, records indicating Plaintiff's desire to work do not necessarily indicate that he can in fact work.  *See, e.g., Biri v. Apfel*, 4 F. Supp.2d 1276, 1279 (D. Kan. 1998) ("Defense counsel has also mentioned that the records indicate that plaintiff *desired* to work.  This is not evidence that plaintiff can work; in fact, it may make plaintiff's claim of disability more believable.") (emphasis in original). Substantial evidence does not support the ALJ's reasons for discounting Plaintiff's credibility based on seeking employment.

Moreover, the ALJ reasoned that Plaintiff's "work history prior to his alleged onset date shows a pattern of low and inconsistent earnings." (Tr. 19.)  The ALJ characterized Plaintiff's work history as "poor" and found that Plaintiff's earnings record detracts from his credibility as it "may indicate a lack of motivation to work rather than a lack of ability."  (*Id.*)  The ALJ's statements in this regard are also not clearly articulated and supported by substantial evidence.

First, the ALJ's statement regarding Plaintiff's lack of motivation to work

appears inconsistent with the ALJ's finding that Plaintiff "continues to seek employment." (*Id.*)  Second, the ALJ's statement regarding Plaintiff's "pattern of low and inconsistent earnings" is conclusory as the ALJ failed to explain how Plaintiff's work history detracts from his credibility other than stating that the work history is "poor."[3]  The ALJ neither identifies the inconsistencies in Plaintiff's work record nor explains how Plaintiff's "low earnings" alone indicate evidence of malingering.  *See, e.g., Bryant v. Comm'r of Soc. Sec.*, Case No. 6:14-cv-534-Orl-37DAB, 2015 WL 2169149 at *8 (M.D. Fla. May 8, 2015) (stating that "[w]ithout more, an adverse credibility determination cannot rest on this thin a reed," where ALJ merely described the plaintiff's work history as a "pattern of low and inconsistent earnings," and found the plaintiff's earnings record "detracts from her credibility" in that "a lack of a consistent work history may indicate a lack of motivation to work rather than a lack of ability"); *see also Schaal v. Apfel*, 134 F.3d 49, 502 (2d Cir. 1998) ("A claimant's failure to work might stem from her

---

[3] A review of the record indicates that, other than the years of 1980 and 2002, Plaintiff received earnings from employment every year from 1976 through the alleged disability onset year of 2011.  (Tr. 183-95.)  It is unclear why Plaintiff's approximate thirty-five (35) year work history would be considered "poor" by the ALJ.  *See, e.g., Lafond*, 2015 WL 4076943 at *9 (noting that "appellate courts have held that an [ALJ] must consider a long and continuous past work record, with no evidence of malingering, as a factor in determining the credibility of assertions of disabling impairments"); *Rivera v. Scheweiker*, 717 F.2d 719, 725 (2d Cir. 1983)("[A]ny evidence of a desire by [the plaintiff] to work would merely emphasize the positive value of his 32-year employment history.  A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.") (citations omitted); *Rieder v. Apfel*, 115 F. Supp.2d 496, 505 (M.D. Pa. 2000) ("The evidence demonstrates that the plaintiff throughout her life almost always had a job. . . When a claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility.") (citation omotted)..

11

inability to work as easily as her unwillingness to work. Therefore, a consideration of work history must be undertaken with great care. An ALJ *should explore* a claimant's poor work history to determine whether her absence from the workplace cannot be explained . . . or whether her absence is consistent with her claim of disability.") (emphasis added).

      Finally, the ALJ placed significance on the fact that Plaintiff stopped working because he was laid off in 2011 rather than because he was disabled. The ALJ's statement in this regard was made out of context. While Plaintiff admitted he was laid off, he also testified that he believed that the "lay off" had to due with his severe pain and emergency hospital trips. (Tr. 37.) Plaintiff also specifically testified that if he had not been laid off, then he probably would not have worked much longer. (Tr. 38.) The ALJ ignored Plaintiff's testimony, but referenced the fact that Plaintiff was laid off as evidence to discount his credibility.[4]

      The Commissioner argues that even if the ALJ committed error in analyzing Plaintiff's credibility, any error should be deemed harmless because the ALJ found multiple other reasons to discount Plaintiff's testimony. (Doc. 27 at 7-8.) However, the ALJ's mischaracterization of the evidence supporting his other reasons for discounting Plaintiff's testimony serves only to highlight the errors

---

[4] The record contains evidence of emergency room visits by Plaintiff during the employment period at issue. (Tr. 280-90; 302.)

made in the credibility analysis. For example, the ALJ noted that Plaintiff was non-compliant with his diabetes medication. (Tr. 18) Plaintiff testified at the hearing, and the medical records seem to suggest, that he encountered difficulty paying for the medication prescribed as a result of poverty. (Tr. 57-58, 234, 303-09, 311.) The ALJ did not analyze Plaintiff's financial situation, but merely stated that Plaintiff was noncompliant with his medications. *See, e.g., Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("We agree with every circuit that has considered the issue that poverty excuses noncompliance.") (citations omitted).

The ALJ also mischaracterized two medical reports discussed when analyzing Plaintiff's credibility. The ALJ stated that a consultative examination with Alvan Barber, M.D. on November 9, 2011, revealed that Plaintiff had no sensory loss and full range of motion in all areas. However, as conceded by the Commissioner, Dr. Barber's report does not state that Plaintiff encountered no sensory loss. (Tr. 311-19.) Dr. Barber's report also does not appear to indicate that Plaintiff's range of motion was full in all areas as the ALJ stated. (Tr. 317-18.) Similarly, the ALJ appears to discount Plaintiff's credibility based on the neurology consultation report of Frank Alvarez, Jr., M.D., emphasizing Dr. Alvarez's observation that "it was not clear if a thorough work up for other treatable causes have been done." (Tr. 18.) Dr. Alvarez actually stated, however, that the consultation revealed polyneuropathy with gradual evolution

13

over the last two (2) years with ongoing pain and "progressive inability to function," which is "*likely* due to the Diabetes." (Tr. 375) (emphasis added.) Dr. Alvarez also opined that Plaintiff appeared "very limited by his various problems." (*Id.*)

      The ALJ also considered Plaintiff's daily activities, such as attending church, performing personal care, watching television, reading, cooking and cleaning, to discount Plaintiff's credibility. (Tr. 18-19.) It is clear within the Eleventh Circuit, however, that "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1444 (11th Cir. 1997). Plaintiff testified that he does not partake in any leisure activities in the community or with family or friends other than driving five to ten minutes to attend church services. (Tr. 59-60.) Plaintiff also testified that he mows a small yard once a month for twenty minutes to assist the individual providing him a free place to stay and that he does not grocery shop too often, but when he does, he does not stay in the store long and does not buy many groceries. (Tr. 61-63.) The ALJ's description that he "cooks" appears exaggerated since Plaintiff actually testified that in the morning, he eats a bowl of cereal and, later in the day, he "cooks" something that does not require him "to stand [over] the stove and watch []." (Tr. 63.) The ALJ failed to properly evaluate Plaintiff's activities of daily living and the decision was not based on substantial evidence.

14


over the last two (2) years with ongoing pain and "progressive inability to function," which is "*likely* due to the Diabetes." (Tr. 375) (emphasis added.) Dr. Alvarez also opined that Plaintiff appeared "very limited by his various problems." (*Id.*)

The ALJ also considered Plaintiff's daily activities, such as attending church, performing personal care, watching television, reading, cooking and cleaning, to discount Plaintiff's credibility. (Tr. 18-19.) It is clear within the Eleventh Circuit, however, that "participation in everyday activities of short duration, such as housework or fishing," does not disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1444 (11th Cir. 1997). Plaintiff testified that he does not partake in any leisure activities in the community or with family or friends other than driving five to ten minutes to attend church services. (Tr. 59-60.) Plaintiff also testified that he mows a small yard once a month for twenty minutes to assist the individual providing him a free place to stay and that he does not grocery shop too often, but when he does, he does not stay in the store long and does not buy many groceries. (Tr. 61-63.) The ALJ's description that he "cooks" appears exaggerated since Plaintiff actually testified that in the morning, he eats a bowl of cereal and, later in the day, he "cooks" something that does not require him "to stand [over] the stove and watch []." (Tr. 63.) The ALJ failed to properly evaluate Plaintiff's activities of daily living and the decision was not based on substantial evidence.

14

## III.  Conclusion

Based on the foregoing, the ALJ's reasons for discounting Plaintiff's credibility are not clearly articulated and are not supported by substantial evidence.  Therefore, this case will be reversed and remanded with instructions to the ALJ to reconsider Plaintiff's testimony regarding his pain and subjective complaints, and explicitly articulate his reasons for accepting or rejecting his testimony.  Additionally, the ALJ may conduct any further proceedings he deems appropriate in light of any new findings.  In light of this conclusion and the possible change in the RFC assessment, the Court finds it unnecessary to address Plaintiff's remaining arguments that the ALJ erred in failing to pose a hypothetical to the VE that comprises of all of Plaintiff's impairments and that substantial evidence does not support the ALJ's ultimate disability determination. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, Case No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).  Accordingly, it is **ORDERED**:

1.  The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions for the ALJ to consider all evidence in the record, articulate a sufficiently clear credibility finding as to the testimony and statements of Plaintiff, and conduct any further

proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b). Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees. *See* In re: *Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ENTERED** at Jacksonville, Florida, on February 3, 2016.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record